UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

'O'

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-09689-CAS-JC | Date | December 8, 2025 |
| Title | GS Holistic, LLC v. Nevada Tobacco Distribution et al | | |

| | |
|---|---|
| Present: The Honorable | CHRISTINA A. SNYDER, United States District Judge |

| | | |
|---|---|---|
| Lesbith Castillo | Robin Herrera | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Tomas Carlos Leon | Omid Johan Shirazi |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS INDIVIDUAL CLAIMS [37] (VIA ZOOM)

## I. INTRODUCTION

On November 11, 2024, plaintiff GS Holistic, LLC ("Plaintiff" or "GS") filed this action against defendants Nevada Tobacco Distribution ("Nevada Tobacco") and Mushabar Rana ("Rana") (collectively, "Defendants"). Plaintiff alleges three claims for relief: (1) a Lanham Act claim for federal trademark counterfeiting and infringement, 15 U.S.C. § 1114, against all defendants; (2) a Lanham Act claim for federal false designation of origin, 15 U.S.C. § 1125(a), against all defendants; and (3) direct and contributory infringement of the 'D817 and 'D804 patents, against Nevada Tobacco. Dkt. 1 ("Compl.").

On April 28, 2025, Rana filed a motion to dismiss. Dkt. 21. On June 6, 2025, while Rana's motion was pending, Rana and Nevada Tobacco filed a second motion to dismiss, which appeared to be identical to the first motion. Dkt. 27. On June 23, 2025, the Court granted Rana's motion, with leave to amend. Dkt. 34. On August 21, 2025, the Court issued an order clarifying that it deemed the second motion to dismiss, dkt. 27, to be identical to the first motion, dkt. 21; accordingly, the Court granted Nevada Tobacco's motion to dismiss. Dkt. 35.

On September 4, 2025, plaintiff filed a first amended complaint. Dkt. 36 ("FAC"). On September 18, 2025, defendants filed the instant motion to dismiss plaintiff's first amended complaint. Dkt. 37 ("Mot."). On October 24, 2025, plaintiff filed an

opposition. Dkt. 38 ("Opp."). On November 24, 2025, defendants filed their reply. Dkt. 29 ("Reply").

On December 8, 2025, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

### A. Parties

Plaintiff GS Holistic, LLC alleges that is a Delaware Limited Liability Corporation that has its principal place of business in Los Angeles, California, and that it is the registered owner of the "G Pen" and "Stündenglass" trademarks in addition to "Hookah" design patents. FAC ¶ 4.

Plaintiff alleges that defendant Nevada Tobacco Distribution is a California corporation with its principal place of business in Los Angeles, California. Id. ¶5. Plaintiff alleges that defendant Mushabar Rana is a California citizen and owns and operates Nevada Tobacco. Id.

### B. History and Use of the G Pen and Stündenglass Brands

Plaintiff alleges that since 2012, it has marketed and sold products including "portable vaporizers and accessories related thereto" using the trademark "G Pen." Id. ¶¶ 7-8. Plaintiff states that due to the continuous and extensive use of the mark, Grenco Science was granted federal statutory and common law rights to the mark. Id. ¶ 9. In 2016, plaintiff alleges, it assigned all rights associated with the mark and other marks associated with different products sold to GS, and the assignment was recorded with the United States Patent and Trademark Office ("USPTO"). Id. ¶ 10. Plaintiff sets forth a list of the trademarks it owns (collectively the "G Pen Marks"). Id. ¶ 11.

Plaintiff alleges that it used the G Pen Marks in commerce throughout the United States continuously since 2016 and that these marks are distinctive to the consuming public and to plaintiff's trade. Id. ¶ 14. Plaintiff alleges that its marks are exclusive, appear clearly on its products, and that it has spent time, money, and resources developing, advertising, and promoting and protecting these marks. Id. ¶ 15. Plaintiff alleges that its branded products have a higher market value than those of its competitors, and that accordingly, its products are targeted by counterfeiters. Id. ¶¶ 21-22.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:24-cv-09689-CAS-JC | Date | December 8, 2025 |
| Title | GS Holistic, LLC v. Nevada Tobacco Distribution et al | | |

Plaintiff alleges that Nevada Tobacco and Rana, Nevada Tobacco's CEO, "mislead consumers by selling in their stores low grade products that free ride on the goodwill of the G Pen brand, and in turn, [Rana] reap[s] substantial ill-gotten profits." Id. ¶ 22. Plaintiff states that Rana's sales result in a "flooding of the marketplace with counterfeit products, which results in lost sales and damages to [plaintiff] and irreparable harm to the G Pen brand's image." Id. Plaintiff further alleges that the sale of counterfeit products results in store owners declining to purchase more expensive, legitimate products for sale. Id. ¶ 23.

Plaintiff alleges that since 2020, it has marketed and sold products using the trademark Stüdenglass, including gravity infuser waterpipes and related accessories. Id. ¶ 25. Due to continuous and extensive use of the trademark Stüdenglass, plaintiff states that it was awarded federal statutory and common law rights to the mark. Id. ¶ 27. Plaintiff sets forth a list of its federally registered trademarks. Id. ¶ 28. Plaintiff asserts that the Stüdenglass marks are distinctive and exclusive, and that it has worked and spent money to establish this. Id. ¶¶ 31-34. According to plaintiff, consumers are willing to pay more for Stüdenglass products and defendants "mislead consumers by selling in their stores low grade products that take a free ride on the goodwill of the Stüdenglass brand, and in turn, the [d]efendants reap substantially ill-begotten profits." Id. ¶ 40.

### C. Defendants' Alleged Counterfeiting and Infringing Activities

Plaintiff alleges that defendants are in the smoke shop business and operate retail stores where they sell water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking-related devices. Id. ¶ 44. Beginning on an unknown date, plaintiff alleges, defendants "without the consent of GS, have offered to sell and sold, both counterfeit G Pen products and counterfeit Stündenglass products with the G Pen trademarks and Stündenglass trademarks, respectively, and without the consent of GS." Id. ¶ 45. Plaintiff states that defendants, without its consent "have offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G Pen Marks … and one or more of the Stündenglass Marks." Id. ¶ 46. Plaintiff alleges that defendants have offered these counterfeit, and nearly identical goods for sale, causing confusion in the marketplace. Id. ¶¶ 48-50. Specifically, plaintiff alleges, "on June 9, 2022, GS's investigator attended [Nevada Tobacco]'s location, which was open to the public, and observed that it had an excess of vaporizers which appeared to display each of the G Pen Marks and an excess of gravity infusers which appeared to display

each of Stündenglass Marks," though the goods turned out to be counterfeit." Id. ¶ 57. On May 9, 2024, the investigator found the same. Id. ¶ 59.

Plaintiff alleges that the defendants did not notify GS' investigator or other customers at the store that the counterfeit Stündenglass gravity waterpipes were indeed inauthentic, nor did the defendants notify GS' investigator or other customers at the defendants' store that the goods lacked the 10-year warranty advertised on the counterfeit product packaging. Id. ¶ 61. Plaintiff alleges that between January 1, 2021, and March 24, 2025, GS' Customer Care team received approximately 768 phone calls from customers who had experienced product related issues stemming from counterfeit goods from retailers such as the defendants. Id. ¶ 62.

Plaintiff alleges that Rana "authorized, directed, and/or participated in [Nevada Tobacco]'s offer for sale, in commerce, of the Counterfeit G Pen Goods and the Counterfeit Stündenglass Goods." Id. ¶ 63. Further, plaintiff alleges that Rana's acts were "a moving, active, and conscious force" behind the infringement of both marks. Id. Plaintiff further alleges that Rana "either personally acquired the infringing products himself or authorized a subordinate employee to acquire infringing products. Id. ¶ 64. Plaintiff alleges that as publicly listed as owner of Nevada Tobacco, Rana "therefore, self purportedly direct[s] the actions of [Nevada Tobacco] … and had the right and ability to make policies and control what products are displayed on shelves and offered for sale to consumers." Id. Plaintiff alleges that Rana "participated to these infringing acts by allowing [Nevada Tobacco] to display and offer for sale counterfeit G Pen products and counterfeit Stündenglass products at its location." Id.

Plaintiff alleges that Rana "had the ultimate decision making authority over the acquisition of the counterfeit G Pen vaporizers and the counterfeit Stündenglass gravity waterpipes and [Nevada Tobacco's] infringement of the G Pen Trademarks and the Stündenglass Trademarks." Id. ¶ 65.

Plaintiff alleges that Rana "was aware, or should have been aware, or was willfully blind of these infringing activities" and that "[Rana] had an obligation and ability to control and stop these infringements[] but failed to do so." Id. ¶ 67. Plaintiff further asserts that Rana "did not want the infringement to stop as, he received direct financial benefits from the infringement." Id.

Plaintiff alleges that the unauthorized sale was committed "under the authority, direction and/or participation of" Rana. Id. ¶ 70. Plaintiff claims that the offer for sale of the counterfeit goods has caused losses and will cause damage to the goodwill and reputation of the marks. Id. ¶ 71. Plaintiff alleges that Nevada Tobacco's use of the marks is likely to cause confusion or deceive customers, that this is done intentionally to confuse customers and aid in the promotion and sale of counterfeit goods, and that the products sold by Nevada Tobacco are inferior. Id. ¶¶ 73-80. Plaintiff alleges that Nevada Tobacco has offered infringing products for sale, intentionally caused or knowingly facilitated infringement by third party retailers, and marketed, advertised, and promoted the goods under infringing marks. Id. ¶¶ 81-85.

Plaintiff alleges that Nevada Tobacco and Rana's "infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by [Nevada Tobacco], and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by [Nevada Tobacco] originate from, and are associated or affiliated with, or otherwise authorized by GS." Id. ¶ 86. Plaintiff claims that both defendants acted willfully, with deliberate intent to trade on the goodwill of the marks, cause confusion, and divert sales. Id. ¶ 87. Further, plaintiff alleges that defendants "as both distributors and merchants of tobacco shop goods, are held to the standard of having specialized knowledge in the tobacco shop industry." Id. Plaintiff alleges that defendants have failed to conduct any reasonable inquiry into the authenticity of the goods sold and "have acted with at least willful blindness as to" plaintiff's rights to the marks. Id. Plaintiff alleges that defendants sold the products for less and did not provide the warranty customers expected for products bearing plaintiff's mark. Id.

Plaintiff claims that Nevada Tobacco and Rana's acts have caused damage and irreparable harm to plaintiff and its marks, and to its reputation and goodwill with the public, for which there is no adequate remedy at law. Id. ¶ 88. Plaintiff alleges that due to the unfair advantage Rana and Nevada Tobacco have gained from their deception, they have made profits to which they are not entitled. Id. ¶ 89. The injuries and damages plaintiff has suffered, it alleges, are directly and proximately caused by Nevada Tobacco and Rana offering infringing goods for sale. Id. ¶ 90. Plaintiff states that Nevada Tobacco has contributorily caused it harm through third party retail sales of infringing goods. Id. ¶ 91. Plaintiff claims that Rana and Nevada Tobacco "purposefully derived

direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of California, and in doing so, have knowingly harmed GS." Id. ¶ 92. Plaintiff alleges that due to the actions of Nevada Tobacco and Rana, defendants caused plaintiff to require counsel, and thus should bear the costs. Id. ¶ 97.

Plaintiff claims that Rana and Nevada Tobacco have damaged, and will continue to damage plaintiff, who has no adequate remedy at law and that defendants' wrongful acts will continue unless enjoined by this court. Id. ¶¶ 92-93.

**D. Nevada Tobacco's Alleged Patent Infringement**

Plaintiff alleges that on February 15, 2022, the USPTO issued U.S. Patent No. D943,817 ("the 'D817 patent"), entitled "Hookah," naming Christian Rule, David Vuong, Christopher Folkerts, Gabriel Alvarez, Tracey Huston, and Michael Trzecieski as inventors. Id. ¶ 100. Plaintiff alleges that on November 22, 2022, USPO issued U.S. Patent No. D970,804 ("the 'D804 patent"), entitled "Hookah," naming Christian Rule, David Vuong, Christopher Folkerts, Gabriel Alvarez, Tracey Huston, and Michael Trzecieski as inventors. Id. ¶ 102.

Plaintiff alleges that GS' Stündenglass waterpipe Hookah and Stündenglass Kompact waterpipe Hookah are marked with the patent number of the 'D817 and 'D804 patents on the products' packaging. Id. ¶ 104.

Plaintiff alleges that Nevada Tobacco offered for sale waterpipe Hookahs that infringed upon the 'D817 and 'D804 patents. Id. ¶ 109. Plaintiff alleges that on June 9, 2022, GS' investigator visited a Nevada Tobacco facility, which was open to the public, and observed that it had at least two Gravity Infuser Hookahs which misappropriated plaintiff's patented Hookah designs ("infringing Hookas"). Id. ¶ 110. Plaintiff alleges that the investigator purchased one of the infringing Hookahs from Nevada Tobacco for $150. Id. Plaintiff includes alleged images of Nevada Tobacco's infringing Hookas and states that an ordinary observer familiar with the prior art would be deceived into thinking that the design of the Infringing Products was the same as the 'D817 and 'D804 patents. Id. at 33, ¶ 110. Plaintiff alleges that Nevada Tobacco has intentionally caused or knowingly facilitated the infringement of the 'D817 and 'D804 patents by third party retailers, causing harm to plaintiff. Id. ¶¶ 116-18.

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon

Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

### A. Lanham Act Claims Against Rana

Defendants argue that plaintiff again fails to state a Lanham Act claim against Rana under a theory of either direct liability theory or a vicarious liability. Mot. at 6-7. As to direct liability, defendants argue that "Plaintiff has not alleged any specific facts to show that [Rana] … [was] a 'moving, active, conscious force' or 'guiding spirit and active directing hand' in the alleged infringement. Defendants argue that "[i]n order to sustain a claim of vicarious infringement, a plaintiff … must allege more than an officer's mere right and ability to supervise the corporation's conduct generally." Id. at 9 (citing Netbula, LLC v. Chordiant Software, Inc., No.08-C-0019-JW, 2009 U.S. Dist. LEXIS 25372, at *9 (N.D. Cal. Mar. 20, 2009)). Moreover, defendants argue that "[m]erely selling allegedly infringing items cannot turn an individual defendant into a 'moving, active, conscious force' on a corporation's behalf." Id. at 10 (citing Vitus v. Steiner, Case No. 2:12-cv-01391-TLN-CKD, 2013 U.S. Dist. LEXIS 116575, *16 (E.D. Cal. Aug. 15, 2013)). Defendants argue that because plaintiff alleges "no factual allegations identifying what actions [Rana] took, when they occurred, or how [Rana] was personally involved in the alleged sale of counterfeit goods," plaintiff's Lanham Act claims against Rana on a theory of direct liability fail. Id. at 10-11.

As to vicarious liability, defendants argue that plaintiff's claims against Rana based on this theory fail because "Plaintiff pleads only conclusory assertions that [Rana] [1] 'had the ability to control and stop these infringements' and [2] 'received direct financial benefits.'" Id. at 11. First, defendants argue that "[t]here is nothing in the FAC alleging that [Rana] actually supervised any employee involved in the purported use and sale of the infringing products; that he knew of or approved of such use, or that … he personally exercised such oversight of the logistics/operations of [Nevada Tobacco] as to

be able to control its activities." Id. at 12. Second, defendants argue that plaintiff fails to allege that Rana personally derived direct financial benefit from the alleged infringement because plaintiff "pleads no facts showing how the alleged sales of infringing products, as opposed to [Nevada Tobacco's] ordinary store revenues, conferred a personal, direct financial benefit on [Rana]." Id.

In opposition, plaintiff argues that it has cured the deficiencies in its original complaint by now alleging specific facts regarding Rana's personal involvement in or direction of the infringing activity: Rana "either personally acquired the Infringing Products himself or authorized a subordinate employee to acquire Infringing Products," FAC ¶ 64, "had the right and ability to make policies and control what products are displayed on shelves and offered for sale to consumers," id., "participated to these infringing acts by allowing the [Nevada Tobacco] to display and offer for sale counterfeit G Pen products and counterfeit Stündenglass products at its location," id., and "had the ultimate decision making authority over the acquisition of the counterfeit G Pen vaporizers and the counterfeit Stündenglass gravity waterpipes," FAC ¶ 65. Opp. at 6, 9.

Plaintiff argues that it need not allege "the who, what, when, where, and how of the misconduct alleged." Id. at 7 (quoting Treefrog Devs., Inc. v. Seidio, Inc., 2013 U.S. Dist. LEXIS 110760, fn.2. (S.D. Cal. 2013)). Plaintiff further argues that its pleadings are analogous to those in Adobe Sys. Inc. v. Software Speedy, in which the court denied the individual defendant's motion to dismiss trademark infringement claims asserted against him, given plaintiff's allegations that he owned the company that engaged in the infringement and was the "lead marketing and lead sales representative of the company." No. CV 14-2152-EMC, 2014 WL 7186682, at *5 (N.D. Cal. 2014).

In reply, defendants argue that plaintiff's "[r]elying on broad ownership and title-based allegations, without identifying any specific act or decision by [Rana] of his participation in the alleged infringing activities[,] does not satisfy Plaintiff's burden to plead facts establishing individual liability." Reply at 2. Furthermore, defendants argue that plaintiff "relies on impermissible group pleading to attempt to impose personal liability on [Rana]." Id. at 5. Defendants appear to take issue with paragraph 87 of plaintiff's FAC, which states in part that "Defendants sold counterfeit G Pen products purporting to be G Pen Connect vaporizers …. Defendants sold counterfeit Stündenglass products purporting to be Stündenglass gravity infuser waterpipes …." Id. (citing FAC ¶ 104).

The Court finds that plaintiff has adequately alleged Rana's personal involvement in the alleged infringement by Nevada Tobacco. In order to allege direct liability of a corporate officer under the Lanham Act, a plaintiff must plead that the individual was "'a moving, active conscious force' behind the corporation's infringement.'" Daimler AG v. A-Z Wheels LLC, 334 F. Supp. 3d 1087, 1006 (S.D. Cal. 2018) (quoting Novell, Inc. v. Unicom Sales, Inc., No. 03-cv-2785-MMC, 2004 WL 1839117, at *17 (N.D. Cal. Aug. 17, 2004)). To plead vicarious liability of a corporate officer, a plaintiff must plead that the officer authorized or directed the infringing activity. Minka Lighting, Inc. v. Bath Kitchen Decor, LLC, No. EDCV1302370RGKMRWX, 2015 WL 12743863, at *8 (C.D. Cal. Feb. 13, 2015) (citing Comm. for Idaho's High Desert, Inc. v. Yost, 92 F.3d 814, 823 (9th Cir. 1996)).

The FAC pleads sufficient facts to allege an infringement claim against Rana personally under both a theory of direct liability and vicarious liability. Importantly, plaintiff now alleges that "[Rana] personally acquired the Infringing Products himself or authorized a subordinate employee to acquire Infringing Products." FAC ¶ 64. Considered alongside the allegations that Rana owns Nevada Tobacco, id. ¶ 5, and "had the right and ability to … control what products are displayed on [Nevada Tobacco's] shelves and offered for sale to consumers," id. ¶ 64, this specific factual allegation provides a sufficient basis for concluding that Rana authorized, directed, and caused the challenged activity in this case. See Software Speedy, 2014 WL 7186682, at *4. In other words, plaintiff sufficiently alleges that Rana "personally t[ook] part in infringing activities or specifically direct[ed] employees to do so" by alleging that Rana acquired the infringing products himself or authorized an employee to do so for the purpose of selling them. See Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1021 (9th Cir. 1985). See also Hewlett-Packard Co. v. Repeat-O-Type Stencil Mfg., No. C-92-3330 DLJ, 1995 WL 552168, at *6 (N.D. Cal. Aug. 30, 1995) ("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement.").

Although the Court acknowledges defendants' argument that plaintiff's allegation "merely parrots th[e] standard" set forth in Transgo, Inc., 768 F.2d at 1021, "[e]ven after Iqbal and Twombly the plausibility standard of Rule 8 does not require 'the who, what, when, where, and how of the misconduct alleged.'" TreeFrog Devs., Inc. v. Seidio, Inc., No. 13CV0158-IEG KSC, 2013 WL 4028096, at *2 (S.D. Cal. Aug. 6, 2013) (citations

omitted). The Court finds that plaintiff's allegations against Rana are sufficient to survive the motion to dismiss stage.

Finally, plaintiff has not engaged in impermissible "group pleading" in paragraph 87 of its complaint. See reply at 5. "[D]uplicative pleading is not necessary 'where collective allegations are used to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct.'" Dubrosky v. Am. Honda Motor Co., No. 2:24-CV-09153-HDV-AS, 2025 WL 2451031, at *4 (C.D. Cal. Aug. 13, 2025) (citation omitted). Plaintiff provides defendants with sufficient notice of its allegations that both defendants willfully sold counterfeit G Pens and Stündenglass gravity infuser waterpipes. See FAC ¶ 87.

### B. Claims Against Nevada Tobacco

Defendants do not appear to move to dismiss any claims asserted against Nevada Tobacco. Accordingly, the Court does not address these claims.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** defendants' motion to dismiss plaintiff's Lanham Act claims against Rana.

The Court orders Rana to answer plaintiff's complaint by December 22, 2025.

IT IS SO ORDERED.

: 08

Initials of Preparer lca